IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| APPLIED SYSTEMS, INC., <br><br> Plaintiff, <br><br> v. <br><br> VILLAGE OF UNIVERSITY PARK, <br><br> Defendant. | No. |

**VERIFIED COMPLAINT**

Plaintiff, Applied Systems, Inc. ("Applied"), by its attorneys, Mark E. Wilson, Bradley P. Nelson and FisherBroyles, LLP, for its complaint against Defendant, the Village of University Park, alleges as follows:

**NATURE OF THE DISPUTE**

1. Applied brings this action to remedy an unconstitutional and illegal misappropriation of millions of dollars that the Village of University Park ("the Village") was required to segregate and hold for Applied's benefit.

2. Facing sluggish development and blighted conditions, the Village adopted a series of ordinances in 1995 providing for the redevelopment of approximately 990 acres of land within the Village (the "Redevelopment Project Area"). The project was to be financed under the Illinois Tax Increment Allocation Redevelopment Act, 65 ILCS 5/11-74.4-1 *et seq.* (the "TIF Act"), which generally provides for the financing of redevelopment of blighted areas through incremental property tax increases occurring after the redevelopment.

3. Applied, an industry leader for the development of technology for insurance agencies and brokerages, foresaw a mutual benefit to itself and the Village by agreeing to

1

redevelop a parcel of land within the Redevelopment Project Area (the "Parcel") in exchange for tax increment financing. The Village would benefit from new commercial development and potential employment opportunities for its residents while Applied would have new facilities to house its swiftly growing business as well as the opportunity to offer employment to residents who might be interested in a career at Applied.

4. The parties entered a Redevelopment Agreement pursuant to the TIF Act and the Village's ordinances. Under the contract, the law and the ordinances, the Village was required to establish a special tax allocation fund (the "Fund") as well as a segregated, specially designated sub-account of the Fund (the "Fund Sub-Account"). When the Village received property tax collections attributable to the Parcel, it was required to deposit collected funds into the Fund Sub-Account and then pay those funds out to Applied. Applied thus had an unqualified property interest in money that the Village was required to deposit to the Fund Sub-Account.

5. Applied has recently learned that the Village never established the Fund Sub-Account as it was required to do. Furthermore, Applied has recently learned that the Village and/or Village officials have intermingled tax increment owed to Applied with other Village funds and have spent or misappropriated those funds, all to Applied's detriment. Additionally, Applied has recently learned that the Village did not establish segregated fund sub-accounts with regard to other TIF redevelopment projects with other developers notwithstanding its obligations to do so.

6. For taxes through the 2016 real estate tax year, the Village owes Applied $1,408,738.28, in tax increment reimbursement requests that the Village should have deposited to a segregated Fund Sub-Account. Furthermore, the Village delivered to Applied four promissory notes payable by the Village out of the Fund Sub-Account (which, as stated, the

Village never even established) in the face amounts of $6,495,603.39. These reimbursement requests and the promissory notes total $7,904,341.67. Applied has substantial concerns that, because the Village has blatantly violated its obligations to Applied to segregate Applied's funds in a Fund Sub-Account and because it has spent or misappropriated the funds, some or all of these amounts will not be collectible.

7. According to news reports, the Village and/or Village officials are under federal investigation for the misappropriation of TIF funds. ABC News has reported that Village Trustees accused the Village President of "raiding TIF fund[s] by setting up phony wire transfers, awarding village contracts to family and friends without board approval and refusing to comply with an audit of village finances." Evelyn Holmes, *University Park Board Calls for Mayor to Resign* (Mar. 30, 2017) http://abc7chicago.com/1825825/. CBS and U.S. News & World Report picked up similar reports from the Associated Press.

8. Those same press accounts also reported a federal investigation into possible misappropriation of funds by the Village and its officials. *See* Holmes, *University Park Board Calls for Mayor to Resign*. Further, the Village President verified to the press that the FBI had seized a number of Village officials' computers. *See id.*

9. According to the Village Trustees, "millions of dollars of Village money is missing." *ABC 7 Eyewitness News* (ABC television broadcast Mar. 30, 2017) *available at* http://abc7chicago.com/1825825/.

10. In light of the foregoing, Applied brings this action for monetary and injunctive relief and other equitable relief to remedy the Village's unconstitutional taking of its property without just compensation and without due process of law. Furthermore, the Village is liable to Applied under the Redevelopment Agreement and should be ordered, by writ of mandamus or

3

other appropriate remedy, to satisfy its constitutional, legal and contractual obligations to Applied. Finally, the Court should order the Village to comply with Applied's Freedom of Information Act request, to which the Village made no timely response.

**PARTIES, JURISDICTION AND VENUE**

11. Applied Systems, Inc. ("Applied") is a corporation organized and existing under Delaware law.

12. The Village of University Park is a home rule municipality organized and existing under Illinois law.

13. This Court has federal question jurisdiction over the federal claims asserted in this action under 28 U.S.C. § 1331.

14. The Court also has jurisdiction over the constitutional claims asserted in this action under 28 U.S.C. § 1343.

15. The Court also has jurisdiction over the state-law claims asserted in this action under 28 U.S.C. § 1367 because the state-law claims are so related the federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

16. Venue is appropriate in this Court under 28 U.S.C. §§ 1391(b)(1) and (2) because the Village is a resident of this judicial district, the events and omissions giving rise to the claims occurred in this judicial district and property that is the subject of this action is situated in this judicial district.

**FACTS COMMON TO ALL COUNTS**

17. The Village Board of University Park ("the Village Board") adopted Ordinance No. 1017 on September 27, 1994. A true and correct copy of the ordinance is attached hereto as Exhibit A. This ordinance designated a "Redevelopment Project Area" under the TIF Act.

4

18. The Village Board adopted Ordinance No. 1018 on September 27, 1994. A true and correct copy of the ordinance is attached hereto as Exhibit B. This ordinance found that the "Redevelopment Project Area would not reasonably be developed without the tax increment derived from real property tax incremental revenues, and the increment from such revenues ***will be exclusively utilized for the development of the Village of University Park Tax Increment Redevelopment Project Area***." (emphasis added)

19. The Village Board adopted Ordinance No. 1019 on September 27, 1994. A true and correct copy of the ordinance is attached hereto as Exhibit C. This ordinance adopts tax increment financing for the Redevelopment Project Area. This ordinance further states that property taxes on property located within the Redevelopment Project Area will be allocated such that taxes attributable to the initial equalized assessed value of the property without tax increment financing will be distributed as otherwise required by law, but that the portion of such taxes attributable to an increase in value of the property over the initial equalized assessed value of the property

> shall be allocated to, and when collected, shall be paid to the Village Treasurer who shall deposit said funds in a special fund called "The Special Tax Allocation Fund" of the municipality for the purposes set forth in the [Redevelopment Project Area] Plan. . . . ***The Village of University Park shall obtain and utilize incremental taxes . . . for the payment of redevelopment project costs*** . . . .

(Ex. C hereto, emphasis added)

20. The Village Board of University Park ("the Village Board") adopted Ordinance No. 1048 on June 13, 1995. A true and correct copy of the ordinance is attached hereto as Exhibit D. This ordinance authorized and directed the Village President and the Village Clerk to execute a Redevelopment Agreement with Applied, which provided for the redevelopment of the Parcel utilizing tax increment financing. This ordinance also authorized and directed the Village

5

President and the Village Clerk to execute and deliver the first of a series of promissory notes payable to Applied "so as to provide a means of reimbursement to [Applied] for the expenditure of qualified redevelopment project costs . . . ." (Ex. D hereto)

21. Effective June 13, 1995, the Village and Applied entered a Redevelopment Agreement authorized by Ordinance No. 1048, a true and correct copy of which is attached hereto as Exhibit E (the "Redevelopment Agreement"). The Redevelopment Agreement states, among other things, that Applied shall make certain improvements to the Parcel and shall "advance" all costs in connection with those improvements. (Ex. E ¶¶ 3.4, 3.5 & 3.9) All such costs were "to be reimbursed to [Applied] subject to the limitations contained in the [TIF] Act and as set forth in Article IV" of the Redevelopment Agreement.

22. Article IV of the Redevelopment Agreement states that "the Village shall reimburse [Applied] for all Redevelopment Project Costs [Applied] has incurred or will incur . . . all to the extent that monies are available for such purposes from monies deposited from time to time in the special tax allocation fund to be established by the Village pursuant to the [TIF] Act (the 'Fund')." (Ex. E ¶ 4.1)

23. The Redevelopment Agreement further obligated the Village to deposit tax increment attributable to the Parcel into a special, segregated, separate account solely for the benefit of Applied: "The Village covenants and agrees to deposit all Tax Increment into a segregated special designated sub-account of the Fund (the 'Fund Sub-Account') immediately upon receipt of such Tax Increment by the Village." (Ex. E. ¶ 4.1)

24. To receive reimbursement from the Village for Redevelopment Project Costs, Applied had to submit requests for reimbursement to the Village. The responsible Village official then had thirty days to recommend approval or disapproval. Thereafter, the Village had

fifteen days to make payment to Applied of all approved reimbursement requests to the extent that money was available in the Fund. If money was not available in the Fund to pay to Applied, the Redevelopment Agreement required the Village to issue a promissory note to Applied to be payable in the future out of the Fund. (Ex. E ¶ 4.2 & 4.3)

25. The Redevelopment Agreement further required the Village to hold the Fund Sub-Account solely for Applied's benefit and to periodically disburse money out of the account to Applied:

> 4.4 **Method of Reimbursement for Redevelopment Project Costs.** *The Village shall disburse monies deposited in the Fund Sub-Account* from time to time not less than once annually and not later than December 31 of the calendar year in which such monies are so deposited in the Fund Sub-Account. *Such obligation shall continue until [Applied] is fully reimbursed for all Redevelopment Project Costs [Applied] incurs, and for all interest due and owing [Applied], as required by the terms of this Agreement and the Notes. All monies contained in the Fund Sub-Account shall be pledged solely to the direct satisfaction of the Village's reimbursement obligations hereunder or to the payment of the Notes*, as set forth in Section 4.2 and 4.3. Since the Fund Sub-Account is as special fund, the deposits into and withdrawals from the Fund Sub-Account shall not be subject to the appropriation process of the Village or the Corporate Authorities and the amounts deposited in the Fund Sub-Account shall be disbursed in accordance with this Agreement, the Notes, and the ordinances or resolutions authorizing the Note without further action by the Corporate Authorities.

(Ex. E ¶ 4.4, emphasis added)

26. Applied submitted reimbursement requests from time to time to the Village and received certain payments and promissory notes. However, Applied has not received reimbursement for any tax increment after the 2014 real estate tax year. The amount of pending reimbursement requests totals $1,408,738.28 for the period ending December 31, 2016. Furthermore, Applied holds four promissory notes from the Village issued pursuant to the Redevelopment Agreement totaling $6,495,603.39, plus interest, costs and fees. Applied has

never received notice of any disapproval of any reimbursement request related to these past-due balances.

27. Applied issued a notice of default to the Village on August 11, 2017 with regard to all amounts due pursuant to reimbursement requests and promissory notes. The Village has never disputed the notice or otherwise responded to it.

### CLAIMS FOR RELIEF

### Count I
### (Fifth Amendment Taking)

28. Applied realleges and incorporates by reference Paragraphs 1 through 27.

29. At all relevant times, the Village was acting under the color of state law.

30. The Village did not establish a Fund Sub-Account for Applied's benefit.

31. The Village did not establish TIF fund sub-accounts for any other developers notwithstanding its obligation to do so under redevelopment agreements with those other developers.

32. The failure to establish the Fund Sub-Account for Applied and the co-mingling or misappropriation of tax increment owed to Applied that should have been deposited into a segregated, special account solely for Applied's benefit constituted an execution of an official government policy or custom.

33. At all relevant times, Applied had a legitimate claim and entitlement to, and thus a property interest in, tax increment attributable to the Parcel by virtue of its statutory and contractual rights to have tax increment deposited into a segregated, special account solely for its benefit.

34. The Village, acting pursuant to official government policy or custom, wrongfully took Applied's property, namely the tax increment attributable to the Parcel.

8

35. Upon information and belief, some or all of the tax increment that the Village wrongfully took was not used for a public purpose.

36. Applied received no just compensation in exchange for the wrongful taking of its property (and in fact received no compensation at all) in violation of the Fifth Amendment of the United States Constitution and 42 U.S.C. § 1983.

## Count II
### (Due Process)

37. Applied realleges and incorporates by reference Paragraphs 1 through 36.

38. Applied also specifically realleges and incorporates by reference Paragraph 33, which alleges that Applied had a bona fide property interest in tax increment attributable to the Parcel.

39. Acting under the color of state law, the Village wrongfully deprived Applied of its property.

40. The Village gave no due process of law to Applied in relation to its deprivation of Applied's property. For example, the Village gave Applied no notice that it had not and would not establish a segregated, special Fund Sub-Account to hold tax increment for Applied; the Village never responded to Applied's request for reimbursement or paid the amounts due upon notice of default; and the Village provided no hearing to Applied with regard to any proposed change in the procedures for reimbursement or the non-payment of amounts owed under the Redevelopment Agreement.

41. The Village's actions violated Applied's right not to be deprived of its property without due process of law under the Fourteenth Amendment of the United States Constitution and constituted violations of 42 U.S.C. § 1983.

## Count III
### (Breach of Contract)

42. Applied realleges and incorporates by reference Paragraphs 1 through 27.

43. The Redevelopment Agreement constitutes a valid, binding and enforceable contract between the Village and Applied that was supported by valuable consideration.

44. Applied performed all conditions precedent and other obligations required under the Redevelopment Agreement.

45. The Village breached the Redevelopment Agreement by (i) not establishing a Fund Sub-Account, (ii) not placing tax increment attributable to Applied's Parcel in a Fund Sub-Account, (iii) co-mingling with other funds and/or misappropriating tax increment attributable to Applied's Parcel, (iv) not reimbursing Applied for reimbursement requests submitted pursuant to the Redevelopment Agreement, and (v) not paying the promissory notes delivered to Applied pursuant to the Redevelopment Agreement.

46. The Village's breach of the Redevelopment Agreement caused Applied to suffer damages.

## Count IV
### (Enforcement of Notes)

47. Applied realleges and incorporates by reference Paragraphs 1 through 27.

48. The Village issued four promissory notes payable to Applied (the "Notes"). The face amounts of the Notes total $6,495,603.39.

49. The Notes are due and payable.

50. The Village has failed to make payment on the Notes.

## Count V
### (Breach of Fiduciary Duty)

51. Applied realleges and incorporates by reference Paragraphs 1 through 27.

10

52. The Village owed Applied a fiduciary duty because the Village was required to hold tax increment in a special, segregated account for the sole benefit of Applied.

53. The Village breached its fiduciary duty by (i) not establishing a Fund Sub-Account, (ii) not placing tax increment attributable to Applied's Parcel in a Fund Sub-Account, (iii) co-mingling with other funds and/or misappropriating tax increment attributable to Applied's Parcel, (iv) not reimbursing Applied for reimbursement requests submitted pursuant to the Redevelopment Agreement, and (v) not paying the promissory notes delivered to Applied pursuant to the Redevelopment Agreement.

54. The Village's breach of fiduciary duty proximately caused Applied to suffer damages.

### Count VI
### (Mandamus)

55. Applied realleges and incorporates by reference Paragraphs 1 through 27.

56. Under the TIF Act, the Redevelopment Agreement and Village ordinances, the Village has the authority and a clear duty to fund a Fund Sub-Account with tax increment attributable to Applied's Parcel and to pay Applied all such tax increment.

57. The Village has failed to fulfil that duty and has refused Applied's requests that it fulfill that duty.

### Count VII
### (Accounting)

58. Applied realleges and incorporates by reference Paragraphs 1 through 27.

59. The Village had a fiduciary duty to Applied to fund and maintain a segregated, special Fund Sub-Account and to account accurately for all amounts owed to Applied.

60. Applied has a need for discovery to trace the funds that the Village should have deposited to the segregated, special Fund Sub-Account.

61. The Village has informed Applied that it has retained an independent auditing firm to conduct an audit of all of the Village's tax increment financing obligations from 2011 to the present and that it cannot or will not confirm amounts owed to Applied or other claimants until that audit is complete. Applied needs an accounting to determine amounts owed just as the Village claims that it needs an audit.

62. The parties have mutual accounts with regard to tax funds. The portion of collected tax funds attributable to the initial equalized assessed value of the Parcel is allocated to other taxing districts within the Village while the portion of tax funds attributable to a higher equalized assessed value of the Parcel is allocated to Applied, subject to the terms of the TIF Act and the Redevelopment Agreement. These mutual accounts are complex and require an accounting to determine conclusively all amounts owed to Applied.

63. Applied does not have an adequate remedy at law to determine conclusively all amounts owed.

### Count VIII
### (Illinois Freedom of Information Act)

64. Applied realleges and incorporates by reference Paragraphs 1 through 27.

65. Applied delivered a Freedom of Information Act request to the Freedom of Information Act Officer of the Village on September 1, 2017 (the "FOIA Request"). A true and correct copy of the FOIA Request is attached hereto as Exhibit F.

66. The Village's response to the FOIA Request was due on September 8, 2017 pursuant to 5 ILCS 140/3(d).

67. The Village failed to respond to the FOIA Request by September 8, 2017.

68. Because it did not timely respond to the FOIA Request, the Village is prohibited from charging any fee pertaining to the request under 5 ILCS 140/3(d).

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Applied Systems, Inc. asks the Court to grant the following relief:

(a) Enter judgment in favor of Applied and against the Village in the amount of $7,904,341.67, plus additional amounts attributable to tax increment for the period January 1, 2017 through September 27, 2017, plus costs, interest, attorneys' fees and expenses;

(b) Issue temporary, preliminary and permanent injunctive relief and/or issue a writ of mandamus maintaining the status quo, prohibiting the Village from taking any formal position that its obligations to Applied have or will expire or terminate pending final payment of all amounts due, freezing funds due and owing to Applied, and establishing and funding a Fund Sub-Account in the amount of tax increment attributable to Applied's Parcel;

(c) Impose a constructive trust on Village assets to the extent those assets are traceable to tax increment attributable to Applied's Parcel;

(d) Order an accounting to determine and confirm all tax increment owed to Applied;

(e) Order the Village to comply with the FOIA Request without charge to Applied;

(f) Award such further relief as the Court deems just.

Respectfully submitted,

APPLIED SYSTEMS, INC.

By: /s Mark E. Wilson
      One of Its Attorneys

Mark E. Wilson
Bradley P. Nelson
FISHERBROYLES, LLP
One North Franklin Street
Suite 3200
Chicago, Illinois 60606
(312) 498-8078
mark.wilson@fisherbroyles.com
brad.nelson@fisherbroyles.com
Attorneys for Plaintiff

## VERIFICATION

The undersigned declares that he is the Vice-President of Finance for Applied Systems, Inc., that he has read this Complaint, that he and other employees of Applied Systems, Inc. have investigated the facts alleged herein and that, to the best of his knowledge, the factual allegations in this Complaint are true and correct.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on _SEPTEMBER 22, 2017_

_____
Michael Budack

4840-7421-4992, v. 2

## LIST OF EXHIBITS

A. Ordinance No. 1017

B. Ordinance No. 1018

C. Ordinance No. 1019

D. Ordinance No. 1048

E. Redevelopment Agreement

4840-7421-4992, v. 2